Good morning, Your Honors. My name is Kirk Jenkins, and I represent the appellant, Safeco Insurance Company of America, and I'd like to reserve my last four minutes for rebuttal if I may. Your Honors, the District Court's partial summary judgment order in this case was an advisory opinion. There has never been a default under the bond in this case, and there may never be. There has never been a demand for forfeiture under the bond. You mean, when you say advisory opinion, you mean opinion forbidden under Article III? That's correct, Your Honor. Not a case of controversy? There was no case of controversy here in our opinion. There has never been a demand for forfeiture here. There may never be. We have no idea what facts may arise between the date of the District Court's partial summary judgment and the day somewhere off in the future when maybe, perhaps, there might be a demand on this bond, and what effect those facts might have on Safeco's possible liability. If you're right as to the meaning of the policy, if the mining continues in areas that have been previously disturbed, as soon as the mining continues, you no longer cover that area. Is that right? Your Honor, I don't believe that we were asked at one point for an advisory opinion on the liability, and we declined to give it. We don't know what... Wait a minute. You came into the court asking. You were the original plaintiffs, right? That's correct, in the District Court. And what did you ask for? You asked for a construction of the policy, right? We asked for the construction of the policy, but we also asked for... And what was your position as to what the policy meant in the District Court? Our position was that if Safeco is liable at all after mining has continued, that it would not be liable for further disturbances of the areas that had been disturbed prior. Okay, that was the position I was trying to outline. That's correct, Your Honor. And if you're right on that, that means the bond is no longer covering that, so they better worry about continuing mining in any area that has been previously disturbed. Isn't that right? Your Honor, it is probably true that there would have been a revocation of Florida Canyon's right to mine, but the scenario... It would have been absent a revocation. They couldn't go forward, could they, without... They couldn't go forward without an assurance that there would be a bond in place. Your Honor... They'd have to stop because they couldn't give that assurance. Your Honor, I believe the way that the statutes and regulations worked is that the state of Nevada and or the U.S. government would have immediately filed suit to stop them. It comes to the same thing. Only, well, but we don't even have to get that far because in the exercise of prudence by the... they wouldn't go out and start continuing to mine because arguably the bond's not in place. With respect to further disturbances, that's correct, Your Honor. So why isn't that a case in Congress? Well, the illustration... to illustrate the answer to your question, I think the case that sets forth the rules is the PG&E versus State Conservation Commission case from the U.S. Supreme Court. The short answer to the Court's question is we don't believe it is to say you get a declaratory judgment if you need one badly enough. Now, the rules that were set forth in the PG&E case come to this. They had two statutes in front of them in that case. One of them was a licensing freeze. We're not going to license any more nuclear power plants. And as to that, the Supreme Court said that's a case of controversy because the collision between the plaintiff and the defendant in this case with respect to that statute is inevitable. You're going to need a license, so you're going to have the collision here. And if the mere passage of time is all that's needed to bring the plaintiff and the defendant into collision, the Court specifically said in PG&E that's enough. That also disposes, by the way, of the bond case out of the District Court of Maryland that the plaintiffs have cited to. In that case, the plaintiff's entitlement to the surviving spouse pension, the only thing that was necessary to bring those parties into collision was the passage of time, nine more years. But there's a second statute in the PG&E case, and that statute says we're going to make a case-by-case determination from one plant to the next as to whether your short-term storage is sufficient. And as to that situation, the Court said that there's not a case of controversy because the mere passage of time is not going to bring the parties into collision there. Maybe someday you'll be held to have insufficient storage. Maybe you won't. Yeah. I don't know that the passage of time is even necessary. That is to say, as soon as you assert the position, and it's at least a plausible position, right or wrong, at least a plausible position, that the bond does not cover further mining in already disturbed areas, there's the collision. Boom. I don't have to wait a minute. Your Honor, the events which are covered here have never happened, so we have no way of knowing whether Safeco is going to be liable or not. You said the events have never happened. What events have never happened? There has to be a default by the principal, and there has to be a demand for forfeiture on the bond, and Safeco has to deny the demand. And that's the collision. But in terms of adverse consequences to the mining company, I think there's an adverse consequence by the mere assertion on your side of a plausible position that further mining in the already disturbed areas is not covered. Isn't that right? No, I disagree, Your Honor, because the reason that that's not an injury sufficient to support a declaratory judgment is that's not an injury that's fairly traceable to the dispute, to use the language of Lujan. That comes from the act of cancellation. It doesn't come from the dispute over the meaning of the bond. And to illustrate that, if everyone involved in this dispute had had the same interpretation of the bond, they still would have been at risk of being put out of business for lack of a bond. So we believe that injury flows from cancellation, and we have the clear right to cancel this bond. Now, do you think your position is obviously correct? I'm not sure how to interpret the word obviously, Your Honor. What I'm asking is you are the ones who originally sought the declaratory judgment, and only after you lose are you thinking when you first filed this lawsuit? Your Honor, in that situation, we had a second request, which was for construction that we had the right to cancel the bond, which there was obviously a case of controversy involved in that. But I can't answer the question as to the request for construction of Section 8. I didn't write the complaint, Your Honor. It was your client's complaint. Yes, it was our client's complaint, Your Honor, but the response to that argument is that we can't bestow federal jurisdiction by agreement of the parties. Even if we were incorrect initially, and we believed there was federal jurisdiction but there wasn't, that doesn't change the analysis. I understand that. Your Honor, to move on to we have argued that the construction by the district court rendered both the right to cancel and the defense of discharge illusory. Now, the plaintiffs say the right to cancel has not been rendered illusory. Safeco has completely lost control over its degree of exposure on this bond. I don't know how it could be any more illusory, but let me suggest a hypothetical for the plaintiffs to consider under the district court's order here. And that is you have a principal and a surety, and at the end of the first renewal period, the principal says, well, I'm not going to pay the premium on the bond anymore. And the surety says, well, in that case, I'm going to have to cancel the bond. The principal responds, well, go ahead, what difference does it make to me? Under the Safeco decision from the district court, as long as I don't step outside the footprint of my mine, I can mine for the next 10 years on that property, stay inside the footprint, and I've got free bonding in perpetuity from you. I'll never have to pay another premium. Your Honor, that can't be the correct interpretation of this bond, and yet it follows directly from the district court's ruling. Speak briefly to the issue of the defense of discharge. It looks to us like the ruling of the district court has stripped us of the defense of discharge. And that is the plaintiffs have argued, well, if there ever is a forfeiture under this bond, you can still argue the defense of discharge if you believe the facts supported at the time. But the problem is that's not what the district court's order says. And I quote, and this is in Excerpts 158, Safeco's liability shall continue and shall not be affected by the timing of any default by Florida Canyon. Now, that sounds to us like a holding of liability, not a holding of theoretical coverage, and that would mean we've lost the defense of discharge no matter what happens in the future. But even if that's not so, even if we still retain that defense, we think it illustrates further the advisory nature of this opinion. Because what we're supposed to believe, if we still have that defense, is that the plaintiffs came to the district court asking, well, is Safeco on the hook or aren't they? And the answer they got from the district court was, well, maybe so, maybe not. That's an even more advisory opinion if it was that conditional. Finally, to speak briefly to the issue of appealability. Your Honors, this is not a waiver case. What happens here, and we've cited the cases both in our initial brief and the reply brief, is called in the cases finalizing a partial summary judgment order. We had a partial summary judgment entered in this case, which in our judgment was about the linchpin of the case. And the cases say, when that happens to a plaintiff, as long as the plaintiff surrenders the rest of the case irrevocably, waives any other claims, which we did, a judgment can then be entered that finalizes the partial summary judgment, and it then becomes reviewable on appeal. That's precisely what we did here. There's not a single case that says you have to explicitly announce your intention to appeal in the final judgment. None of the cases plaintiffs have cited deal with finalizing a partial summary judgment. Your Honor, we ask that the court reverse and remand with instructions that the case be dismissed for lack of a case of controversy, or in the alternative, reverse and remand with instructions to deny the declaratory relief sought by the plaintiffs and grant that sought by Safeco. And unless the Court has questions, I'll reserve the rest of my time. Thank you for your argument. I'm here from the United States at this time. Good morning, Your Honors. My name is Lawrence Kirsch. I represent Florida Canyon Mining, one of the three plaintiffs and appellees in this case. Although I do not represent the other parties, I've been asked to speak on their behalf at the argument today, but I'd like to introduce my co-counsel, Mr. William Lazarus of the United States Department of Justice, Mr. William Fry, Deputy State Attorney General of Nevada, and Donald Vagstad, Vice President and General Counsel of Florida Canyon Mining. Your Honors, Safeco's argument about lack of a case or controversy I would submit is just extraordinary here. Not only was the dispute ripe at the time it was brought before Judge Hagan, that was the only opportunity we would have ever had to have that dispute resolved. As Your Honor pointed out, had the dispute not been reviewed then, the government would have been required to shut down the Florida Canyon Mine, there would have been no further mining, and the scope of the surety bond with regard to further disturbances in previously disturbed areas could never have gotten judicial review anywhere, any time. That, of course, is an important factor the courts have to consider in looking at ripeness, and this case was ripe. It's also extraordinary the argument that the injuries here were not traceable to Safeco's positions on the meaning of the surety bond, but to the cancellation. Your Honor, it seems to me that argument is directly belied by the history of this case. We are here today, four years later, after the bond has been canceled, and Florida Canyon is alive and in business. Judge Hagan did nothing to reverse the cancellation of the bond. What Judge Hagan did was he clarified the meaning of the bond language. That was the injury that we needed to have avoided, and that is the injury that was avoided through the opinion. Can you just explain to me how the bond works in the following sense? What happens? I mean, the bond's canceled, yet it covers certain parts of the footprint nonetheless. I mean, just lead me through this. This is an area of insurance law that I'm not altogether familiar with. Your Honor, under the terms of the bond, sometimes surety bonds are not cancelable at all. This surety bond does allow cancellation, but it requires that the bond remain in full force and effect. That's the language of the bond, remain in full force and effect with regard to any areas disturbed prior to the cancellation. Now, it says areas disturbed, Your Honor, not particular disturbances. So it's a sort of partial cancellation, as it were. Well, it's not canceled as to areas previously disturbed under your view of it. That is right, Your Honor. The bond doesn't say that the surety remains liable. The bond says that the bond remains in full force and effect, and it seems that that language itself connotes further coverage, the ability to have no kind of a freeze frame here, but the ability to have further mining after cancellation. Well, when you say further mining, you mean going into new areas. You're putting it this way. What the cancellation? Cancellation is not illusory because, in fact, the mining company can't go out, take a undisturbed area, and start in mining operations because they wouldn't have a bond for that. That's correct. However, because the full force and effect of a previously disturbed area and further development of a previously disturbed area reflects the reality that it may be extraordinarily difficult to try to parse between, assuming you've got a new bond, by the way, but assuming you've got a new bond or you were going to self-insure or whatever it was, you couldn't possibly parse that area of the reclamation that would be required by virtue of one area versus the other, versus one developing, one phase of development versus another phase of development of the same area. Is that the reality of it? That is correct, Your Honor, and there's more, though. We need to distinguish this case, which I would submit is an unusual case, from the normal case involving a surety bond. In the normal case involving a surety bond, a company seeking to issue a bond would not just go out and issue a bond. It would first appraise the credit of the mining company it was going to issue the bond to. It would enter into a lengthy indemnification agreement that would set forth understandings between the parties about what happens in the event of nonpayment. That's a response to the question about that, Your Honors. The surety company would seek collateral. And finally, the surety company, of course, would charge a premium, reflecting the residual risk it is assuming. Now, all of that, in fact, happened in this case, Your Honors. What happened here and what makes this case unusual is that a bankruptcy of the company that was the party to the indemnification agreement intervened. And so Safeco is left here without the coverage of an indemnification agreement that it did have previously and that surety companies dealing with this situation and this bond coverage normally would have. Normally, sureties in this situation are fully protected, because they are only liable up to the amount of the penal sum, and they take those factors into effect in issuing the bond. This mine is or was on BLM land? It is in part, Your Honors. It's part BLM land and part private land. And BLM and the State of Nevada operate under a cooperative agreement so that the two of them exercise joint regulatory authority, but the bond is held by BLM. Is Nevada a beneficiary of the bond? Nevada is not named as a beneficiary of the bond, but Nevada is in fact a beneficiary of the bond with regard to private land. And also, Nevada is the regulatory agency that deals with regulation of mining in the State of Nevada and therefore is involved in that way. But they're an indirect beneficiary? I would say so, yes, Your Honor. And as an indirect beneficiary, they're not entitled to third-party beneficiary status as a party, are they? I'm not sure exactly how the interagency memorandum is worded, Your Honors, but I know that in the event of a default, the State would be covered by the bond for private land. Do they have standing? The question is whether they even have standing to sue. Well, I think they clearly do, Your Honors, because not only because they are an indirect beneficiary, they benefit from the bonding coverage, and they also are the regulatory agency charged with administering the regulations that these bonds are issued pursuant to. So that gives them standing as a regulatory? They sued in their capacity as a regulatory agency? Yes, Your Honors. Is the argument as to standing, and I'm not sure this makes much difference, if there's a case of controversy as to Florida mining and as to the United States, but not having standing under the bond may or may not be the same question as to having sufficient interest under Article III. I'm sorry? Not having standing as a direct beneficiary of the bond to bring suit, which Nevada, I gather, does not have. That may not be the same as saying that Nevada has no injury sufficient for a case of controversy. That's true, too, Your Honor. I would agree with that. Nevada does have an injury here through its interest in the proper administration of the mining laws within the state. I do feel here, Your Honors, as I must confess as I stand before you, I feel a heavy weight on my shoulders, not only the weight of the jobs of over 180 miners whose jobs depend on this decision, but also the entire community of the county, Your Honor, the economy of which depends on the Florida Canyon mine. So I think the state has many interests here. It is properly in this case. SAFCO argues that the plain result of the ruling below is to grant coverage in perpetuity. What's your response? I think that, Your Honors, the bond language is plain and simple. The bond refers to the bond remaining in full force and effect with regard to all areas disturbed prior to the cancellation. That's what the bond says. SAFCO voluntarily issued into the bond, went into the bond. There's nothing unfair about SAFCO holding SAFCO to its bargain. Now, SAFCO could get out, Your Honors, in a number of different ways, one of which is if there were some other bonding available. But Florida Canyon at this point has no way to get other bonding. That's why we're here. With regard to the waiver point, Your Honors, the issue has been briefed extensively. Unless Your Honors have any questions on it, we'd like to simply submit that issue on the briefs, but I'd be happy to answer any questions on that matter. When you say waiver, you mean the appealability? The appealability, yes, Your Honor. Thank you. Your Honors, just three quick points. First of all, Judge Breyer asked whether the dimensions of the reclamation project could be separated out if the footprint area continued to be mined after the date of cancellation. And counsel said the answer was no, they couldn't be. In fact, the answer is a lot less clear than that. The answer is it depends. It depends on what happens. If the character of what goes on in that mine after the date of cancellation is dramatically different within the footprint, in fact, it might be very easy to separate out what happened after the date of cancellation and what happened before the date of cancellation. Admittedly, in some cases it might be more difficult, but the answer that it could never be separated out is simply not so. Number two, we've been talking about what would have happened here, and counsel painted a picture of tumbleweeds blowing past this mine if the Safeco's rights hadn't been, in our view, upheld here. Your Honor, the truth is we don't know what the government would have done. The government indicated that Florida Canyon might very well lose their license to proceed. But the fact of the matter is this is extremely valuable mining property. I get that from the appellee's excerpts at page three, where they say in the next five years they were planning on making $25 million in capital improvements. Now, it's in the nature of surety bonding that there are a lot of possibilities that are considered. This isn't insurance, where when there's a loss, it's a pure loss to the insurance company. And one of the possibilities that's considered in the process of underwriting is the possibility that if there's a default by the mining company, a completely different mining company will come in, buy that leasehold interest, and substitute out the surety. So it's very unclear what would have happened in this case. And finally, counsel was talking about Florida Canyon's inability to get another bond. Our view is that the district court's construction of this bond, because it ties us to liability for the foreseeable future on this property without getting any premiums for it, we've read one paragraph of the bond to create an absurd result, and we believe that's not possible. But counsel said, well, we haven't been able to get a substitute bond. My response to that is, why on earth would they, under the district court's order? They have free bonding within the footprint area for the rest of the youthful life of this mine, and that's the result that we've been led to by the court's order. You know, one of the things that puzzled me as I was preparing this case was the apparent lack of authority. I don't see a lot of other cases involving this question or this clause. How come? Your Honor, the honest answer is I don't know. I came to the same conclusion when we were preparing this case, that there is a lack of case law directly on point construing this provision of the bond, which is written by the U.S. government. It's important to note SACO didn't write this bond. But you determined the premium. Yes, that's correct. So reading the language, you figured out, well, what's this worth? Yes. And as I understand it, your position is as soon as they turn over a shovel full in an already mined area, at least as to the area that that shovel full contains, boom, your bond is not any longer in full force and effect as to that shovel full, right? It's a little bit more complicated than that, Your Honor. Our position is further disturbances within the footprint are certainly not covered. Whether or not there would be an element of liability within that footprint still, that's another question, Your Honor, and it's more difficult to answer at this point. But if you've got a situation where realistically and economically the mining would continue within the existing footprint, your position leads to a virtual extinguishment of your obligation under the bond because it's predictable that they're going to continue to mine there. I'm not sure that's true, Your Honor. If our position had been upheld here, we believe that Florida Canyon would have the incentive to go get a second bond. No, I mean the extinguishment of your bond. No, Your Honor, it's not clear that that would be true, that we would automatically have no further liability. It would depend from one case to the next. Is there any further questions? We'll submit, Your Honor. I don't see any. Thank you. Thank both counsel for their argument. The case just argued will be submitted for decision, and the court will stand in recess for the day. Thank you very much.
judges: Hawkins, W.fletcher, Breyer